### In re PIERCE'S ESTATE.

### PIERCE et al. v. COMPTROLLER OF STATE OF NEW YORK.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1909.)

TAXATION (§ 865*)—TRANSFER TAX—PROPERTY SUBJECT—BANK DEPOSITS.

Transfer Tax Law (Laws 1896, p. 868, c. 908) art. 10, § 220, imposes a tax on the transfer of property when made in contemplation of the death of the transferror, or intended to take effect in possession or enjoyment at or after his death. A father deposited money in various savings banks as trustee for his wife and children; each account being in his name as trustee for a particular person named. The passbooks were kept in a deposit box to which all the members of the family had access. The children were told that the funds set apart to them would belong to them at the age of 21 years, and the wife was told when the trust was made that her share of the funds belonged to her. On the marriage of one of the daughters, at which time all the children were 21 years old, she requested that her account be transferred to her, but

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was told by her father that the account was already hers, and that he could take care of it better where it was. *Held* that, though there was no transfer of the accounts, the trusts became irrevocable before the death of the father, and that the funds were not subject to the tax.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 865.*]

McLennan, P. J., and Spring, J., dissenting.

Appeal from Surrogate's Court, Cattaraugus County.

In the matter of the appraisal of the estate of William P. Pierce, deceased, under the acts relating to taxable transfers. From an order and decree of the Surrogate's Court affirming an order or decree taxing certain savings bank trust funds held by decedent, Bryon A. Pierce and another, as administrators, appeal. Reversed.

For prior report, see 60 Misc. Rep. 25, 112 N. Y. Supp. 594.

William P. Pierce, a resident of the city of Olean, in Cattaraugus county, died intestate on the 14th day of April, 1908, leaving, him surviving, his wife and three children, all of full age. He made deposits of moneys in various savings banks in the state of Massachusetts. The deposits were in form as trustee for his wife and children; each account being in the name of William P. Pierce, as trustee for a particular person named. The accounts aggregated, at the time of his death, the sum of $21,722.03. They were opened by him long before his death, and the deposits were made from time to time, covering a period of many years. When a given account reached the interest-bearing limit in the bank, a similar account would be started in another bank, so that at his death there were fifteen accounts in all. The surrogate held that the funds were taxable under the transfer tax law, and the administrators appeal.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

P. M. French, for appellants.
George M. Lundy, for respondent.

KRUSE, J. We agree with the learned surrogate that if these savings bank deposits were mere tentative trusts, revocable by the deceased, the depositor, during his lifetime, they are taxable under the transfer tax law, although the trust became absolute and irrevocable upon the death of the depositor. The transfer tax law imposes a tax upon the transfer of property when made in contemplation of the death of the transferror, or intended to take effect in possession or enjoyment at or after his death. Tax Law (Laws 1896, p. 868, c. 908) art. 10, § 220.

It is contended on behalf of the appellants, however, that the trust became irrevocable and effective before the death of the deceased. The rule by which this question must be determined is stated in Matter of Totten, 179 N. Y. 112, 125, 71 N. E. 748, 752, 70 L. R. A. 711, as follows:

"A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

. arises that an absolute trust was created as to the balance on hand at the death of the depositor."

To determine whether the deceased completed the gifts in his lifetime, it will be necessary to examine a little further the facts, and in so doing it should be kept in mind that the unequivocal act or declaration required to complete the gift is such as delivery of the passbook or notice to the beneficiary.

The facts do not seem to be in dispute. It appears that, besides the widow, the deceased left a daughter, 31 years of age at the time of his death, and two sons, aged 28 and 24 years, respectively, at that time. The deceased had a safe deposit box in which were kept the passbooks and other securities belonging to him and the members of his family. . The deceased and his sons had keys to the deposit box, but all the members of the family seem to have had access thereto, as occasion required. While the sons occasionally had the bank books, I think no such delivery of the passbooks was shown, as of itself, unaided by other acts and declarations of the deceased, would make the trust absolute and irrevocable. It appears, however, that the wife and children were kept informed of the deposits, and the deceased declared to them his purpose in opening the accounts and making the deposits. He often stated to the children that the funds set apart for them would belong to them at the age of 21 years, and told his wife that her funds were hers, at the time the trust was made.

The form of the accounts was not changed, and the moneys were all left in the banks. The deceased used none of the funds himself, nor did he pay any of the moneys over to his wife and children, and no request was ever made by them that he do so, except that shortly before his death the daughter requested that the accounts which had been made in trust for her be transferred to her name. That occurred about the time she was married. Up to that time the deceased and his wife and children had lived together as one family. Stress is laid upon this request, and the fact that the account was not transferred, as showing that the trust was then of a tentative nature. It seems to me, however, that the conversation as a whole between the father and the daughter does not bear out that claim. She said to her father:

"Father, why could not these accounts made in trust for me in Boston be made over to my name so that I may have them in Rochester near my home?"

The father answered that these accounts were already hers, and had been since she was 21 years of age, and that she had better leave them in Boston, so that he could take care of them when he took care of his own accounts. All of the children were then over 21 years of age, and his statement to her that these accounts were already hers is quite in accord with his previous declarations that the moneys so deposited by him for the children should belong to them at the age of 21 years. There is no evidence to show that the deceased ever retracted the declaration, which he made before the children became of age, that the money should belong to them when they became of age.

The mere fact that these accounts were not changed in form, and the moneys paid over to the children at the age of 21 years, is not, as it seems to me, a controlling circumstance to show that the trust was

merely tentative. It was quite natural that, so long as the children remained at home and were members of the family, they should be entirely content to leave the funds in the form in which they had been deposited; and the same may be said as regards the moneys deposited for his wife.

The case of Tierney v. Fitzpatrick, 122 App. Div. 623, 107 N. Y. Supp. 527, relied on by counsel for respondent, is distinguishable from this case, by the fact that there the proposed gift, consisting of moneys in a savings bank, was not to become effective until after the death of the donor. Here, as has been seen, the trust became absolute and irrevocable during the lifetime of the donor.

The order appealed from should be reversed, with costs, and the order and decree of the surrogate fixing the amount of the taxable estate be modified by deducting therefrom said trust funds and reducing the tax accordingly.

WILLIAMS and ROBSON, JJ., concur.

SPRING, J. (dissenting). Mr. Pierce, the decedent, when he made each deposit in the savings bank to his credit as trustee for the child named in the certificate, doubtless intended that at some time the money would belong to the person designated. He did not, however, irrevocably part with his title to the money, and his conduct with reference to the deposit indicates that he proposed to retain not alone the control and dominion over each of these deposits, but the right at any time to revoke the apparent trusteeship and use the money as he desired. He was anxious to aid his children, yet with his thrift and caution he retained the real ownership of the property in order that he might be prepared for any stress of circumstances calling for its use. The trust, if any, was tentative only. He kept the possession of the certificates. To be sure, they were in the deposit box to which his sons had access. The box was a general depository for the valuables of the family apparently, and there is no pretense that any of the children exercised any dominion over these certificates. One of them occasionally adjusted the interest, but even this clerical work was performed at the explicit direction of the father.

It is claimed that these deposits were intended to become effective as each child arrived at maturity. Whatever may have been his intention, there was no delivery over of any certificate of deposit as each child reached the alleged culminating period. The father kept close supervision and dominion over the same as before, although the youngest of his children was 24 years of age when the old gentleman died. One of the sons testified to declarations of his father that these deposits would belong to the children as each became 21 years of age. Again, when the daughter, several years after her majority and upon her marriage, asked her father for the money deposited for her benefit, he said it was hers, but he would retain it. The significant fact is he kept the money until his death. He had accumulated this property and evidently proposed to keep it until his death, and I am convinced that he did not expect these gifts, if such they were, would become effective in any event until he died.

The witness testifying to the declarations of his father was interested, in that, while he was confined to statements of his father pertaining to the other two children, the deposits were alike in form and treated alike, so the evidence must inevitably inure to the benefit of the witness. Testimony of this character against the decedent must be scrutinized carefully. In the present case it is not supported by the acts of the father with regard to these deposits, and, after all, they are the best exponent of his intention. It is also to be noted that neither the widow of the intestate, the elder son, nor the daughter gave any testimony of like declarations made by the father.

There were no specific findings by the surrogate, but his decree directing the imposition of the tax and the order confirming the same upon appeal in effect settle the questions of fact adversely to the appellants.

The decree and order of the surrogate should be affirmed, with costs.

McLENNAN, P. J., concurs.